**In the matter of TROY INDUSTRIAL CA-TERING SERVICE f/k/a Pat's Catering Service, Inc., a Michigan Corporation, Debtor.**

**TROY INDUSTRIAL CATERING SER-VICE, f/k/a Pat's Catering Service, Inc., a Michigan Corporation, Plaintiff,**

v.

**STATE OF MICHIGAN, DEPARTMENT OF TREASURY, REVENUE DIVISION, Defendant.**

**Bankruptcy No. 9–04043–B.**

United States Bankruptcy Court, E. D. Michigan.

Jan. 18, 1980.

Hyman, Gurwin, Nachman, Friedman & Winkelman by Stanley M. Weingarden, Southfield, Mich., for plaintiff.

Frank J. Kelley, Atty. Gen., Lansing, Mich., by E. David Brockman, Asst. Atty. Gen., Detroit, Mich., for defendant.

### OPINION

GEORGE BRODY, Bankruptcy Judge.

This case presents the question of the power of the bankruptcy court to compel the turnover of property seized by a creditor prior to the filing of a Chapter 11 proceeding under the Bankruptcy Reform Act of 1978.

Troy Industrial Catering Service, a Michigan corporation (hereinafter referred to as the "debtor"), is involved in the industrial catering business. On May 24, 1979, the Department of Treasury of the State of Michigan issued a jeopardy assessment pursuant to MCLA § 205.64 against the debtor for unpaid sales taxes and, pursuant to this assessment, seized all catering trucks, food inventory and books and records of the debtor.

The debtor then filed a complaint in Oakland County Circuit Court requesting that the court order the State to return the seized property. A temporary restraining order was issued enjoining the State from selling the property, but the court on July 27, 1979, dissolved the temporary restraining order and dismissed the debtor's complaint. However, the court stayed the sale of the seized property to permit the debtor to appeal the dismissal. An appeal was taken and is still pending.

On December 3, 1979, the debtor filed a petition under Chapter 11 of the Bankruptcy Reform Act of 1978 (Public Law 95–598) (hereinafter referred to as the "Bankruptcy Code").[1] The State moved to vacate the automatic stay imposed by Section 362 and, in addition, to dismiss the Chapter 11 proceeding or have it converted to a Chapter 7 case. Contemporaneously, the debtor filed a complaint pursuant to Section 542 of the Bankruptcy Code to compel the State to return the seized property.

The debtor and the State have agreed that the issues presented by the complaint filed by the State are to be held in abeyance pending the court's determination of the turnover issue.

Section 542, in pertinent part, provides that an entity

". . . in possession, custody, or control . . . of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property unless such property is of inconsequential value or benefit to the estate."

An entity under the Bankruptcy Code "includes any person, estate, trust, governmental unit." 11 U.S.C. § 101(14). "Governmental unit" includes the United States or any state. 11 U.S.C. § 101(21). Thus, if the property seized is property of the estate that the debtor may use, sell, or lease under § 363 of the Bankruptcy Code, and if it is property of more than inconsequential value or benefit to the estate, the State may be required to return the property.

The initial question to be determined is whether the property seized by the State is property of the debtor. Under the Bankruptcy Code, an estate is created upon the commencement of the case. 11 U.S.C. § 541(a). The estate created consists of "all legal or equitable interests of the debtor in property as of the commencement of the

1. *Title I*, which is now Title 11 of the United States Code, is a codification of the substantive bankruptcy law and is referred to as the "Bankruptcy Code."

*Title II* amends Title 28 of the United States Code (the Judicial Code) and the Federal Rules of Evidence.

*Title III* contains conforming amendments to other federal statutes that deal with bankruptcy matters.

*Title IV* is the transition title. Although the Bankruptcy Code was enacted November 6, 1978, and became effective on October 1, 1979, many of its provisions do not become effective until April 1, 1984. Title IV of the Act is designed to provide an orderly transition to the Bankruptcy Code.

case." 11 U.S.C. § 541(a)(1).[2] The legislative history indicates that the scope of Section 541 is extremely broad, and that it ". . . includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act § 70a(6)), and all other forms of property currently specified in section 70a of the Bankruptcy Act § 70a, as well as property recovered by the trustee under section 542 of proposed title 11, if the property recovered was merely out of the possession of the debtor, yet remained 'property of the debtor.'" H.R.Rep. No. 595, 95th Cong., 1st Sess. 367 (1977), U.S.Code Cong & Admin.News 1978, pp. 5787, 6323.

The trucks, food inventory and books and records, prior to the seizure, were admittedly property of the debtor. It becomes necessary, therefore, to determine whether, despite the seizure, the debtor retains the requisite interest in the property to compel turnover pursuant to Section 542.

■ The State contends that the prebankruptcy seizure divested the debtor of all interest in the property and, therefore, the court may not compel its return by the State. This contention has no merit.

Although this controversy involves a seizure of property by the Department of Treasury of the State of Michigan to enforce the collection of a state sales tax, it is pertinent to consider the effect of a seizure under the Internal Revenue Code.

26 U.S.C. § 6331(a) and (b) of the Internal Revenue Code authorizes the Secretary of Treasury to collect a delinquent tax by levy upon, and seizure of all property and rights to property (except exempt property) belonging to the taxpayer. The Secretary is required to inform "the owner of the property (or, in the case of personal property, the possessor thereof)" of ". . . the sum demanded and . . . in the case of personal property, an account of the property seized . . . ." 26 U.S.C. § 6335(a).

The Secretary is also required to give notice to the owner regarding any proposed sale of the property. 26 U.S.C. § 6335(b). A person whose property has been levied upon has the right to pay the amount due prior to sale and upon such payment, the Secretary is required to return the property to him. 26 U.S.C. § 6337. Before the sale, the Secretary is required to set a minimum price for the sale and, if this amount is not obtained, to declare the property purchased at such price for the United States. 26 U.S.C. § 6335(e)(1). The sale transfers "to the purchaser all right, title and interest of the party delinquent in and to the property sold." 26 U.S.C. § 6339.[3]

■ Seizure by the Secretary of Treasury is merely a step in the collection process. Seizure "does not in and of itself operate to transfer title to the government." *In re Brewster-Raymond*, 344 F.2d 903, 910 (6th Cir. 1965). This is made crystal clear by the court in *Bennett v. Hunter*, 9 Wall. 326, 76 U.S. 326, 19 L.Ed. 672 (1870), wherein the Court stated:

"What preceded the sale was merely preliminary, and independently of the sale, worked no divestiture of title. The title, indeed, was forfeited by non-payment of the tax; in other words, it became subject to be vested in the United States and, upon public sale, became actually vested in the United States or in any other purchaser; but not before such public sale. It follows that in the case before us the title remained in the tenant for life with remainder to the defendant in error, at least until sale; though forfeited, in the sense just stated, to the United States." *Bennett v. Hunter, supra*, at 336–337.

Nor is the result any different when a seizure is made by the State of Michigan. To enforce collection of delinquent sales taxes, the Michigan General Sales Tax Act, like the Internal Revenue Code, authorizes

---

2. Section 542 excepts certain categories of property from the property of the estate. The exceptions are set forth in Section 541(b) and (c)(2). None of these exceptions are applicable here.

3. For a comprehensive discussion of the tax collection process, see Plumb, "Federal Tax Collection and Lien Problems," 13 Tax L.Rev. 247 (1958).

the seizure and sale of property of the delinquent taxpayer. MCLA § 205.62. Admittedly, the State act is not as comprehensive as the Internal Revenue Code, and does not spell out in detail what takes place after seizure and prior to, and after sale. However, the State provisions do not even remotely indicate, nor has the State submitted any authority which holds, that the effect of seizure under the State law is any different than it is under Federal law.

The State, in opposing the turnover request by the debtor, relies on *Bush Gardens, Inc. v. United States of America*, 5 B.C.D. 1023 (D.N.J., 1979). Admittedly, *Bush* supports the position asserted by the State. *Bush*, however, is not persuasive. It misreads both the cases it relies upon and the Bankruptcy Code in reaching the conclusion that it did.

In *Bush*, the Internal Revenue Service levied upon and seized the debtor's liquor license, pursuant to 26 U.S.C. § 6331, to enforce the collection of federal withholding and social security taxes. Prior to the sale of the license by the Internal Revenue Service, the debtor filed a Chapter 11 proceeding under the Bankruptcy Act, and filed a complaint to compel the Internal Revenue Service to return the liquor license to the debtor. The court dismissed the complaint in reliance upon *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975), and the fact that the United States had a "significantly greater interest" in the liquor license than the debtor. This conclusion is spelled out by the Court as follows:

"... in examining the interests of both the debtor and the United States, and in reliance on *Phelps* and *Pittsburgh*, must conclude that the United States has a significantly greater interest in the liquor license. Property levied upon and seized by the United States government for the collection of taxes pursuant to 26 U.S.C. § 6331 prior to the filing of a petition under the Bankruptcy Code is not 'property of the estate' within the meaning of Section 541. ... It is

not property that may be used, sold or leased under Section 363 of the Code . . . ." 5 B.C.D. 1023, 1026.

*Phelps* involved the troublesome question of the bankruptcy court's summary jurisdiction. In *Phelps*, a receiver in a liquidating bankruptcy filed an application with the bankruptcy court for an order requiring the turnover of property held by an assignee for the benefit of creditors upon which the Internal Revenue Service had filed a notice of tax lien. The referee in bankruptcy entered the requested order. The Court of Appeals reversed, holding that:

"Since possession of the property resided in the United States as against the [petitioner] receiver, the bankruptcy court lacked jurisdiction summarily to adjudicate the controversy without the Government's consent. ... The United States is now entitled to have its claim adjudicated in a plenary suit." 421 U.S. 332, 95 S.Ct. 1730.

The Supreme Court, in affirming the Court of Appeals, held that:

" ' . . . where possession is assertedly held not for the bankrupt, but for others prior to bankruptcy . . . the holder is not subject to summary jurisdiction.' 2 J. Moore & R. Oglebay, Collier on Bankruptcy ¶ 23.06[3], pp. 506.2–506.3 (14th ed. 1975); *Cline v. Kaplan*, 323 U.S. 97 [65 S.Ct. 155, 89 L.Ed. 97] (1944); *Galbraith v. Vallely*, 256 U.S. 46, [41 S.Ct. 415, 65 L.Ed. 823] (1921). . . ." 421 U.S. 336, 95 S.Ct. 1732.

The Supreme Court in *Phelps* merely held that the court did not have jurisdiction to decide the property question and that to obtain the relief requested, "the receiver's recourse is limited to a plenary suit under § 23 of the Bankruptcy Act, 11 U.S.C. § 46. See *Taubel-Scott-Kitzmiller Co. v. Fox* [264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770 (1924)], supra." 421 U.S. 336, 95 S.Ct. 1732. The Court, in *Phelps*, did not determine the respective interests of the parties in the property seized by the Internal Revenue Service.[4]

---

4. In *Phelps*, the Court in a footnote does state that a pre-bankruptcy levy divests the taxpayer

of title to the property. See footnote 8, 421 U.S. 337, 95 S.Ct. 1728. The facts in *Phelps*

■ The Bankruptcy Code abolishes the distinction between summary and plenary jurisdiction.[5] Under the Bankruptcy Code, the bankruptcy court has jurisdiction of all civil proceedings arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1471(a), (b) and (c).[6] In addition, § 1471(e) provides that the bankruptcy court in which a case is commenced "shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of the case." The bankruptcy court, under the Bankruptcy Code, therefore, has jurisdiction to hear and determine all matters affecting the administration of a bankruptcy case. This is made clear by the legislative history, which states that

> "This is the broadest grant of jurisdiction . . . Actions that formerly had to be tried in State court or in Federal district court . . . may now be tried in the bankruptcy courts. The idea of possession or consent as the sole bases for jurisdiction is eliminated. The bankruptcy court is given in personam jurisdiction as well as in rem jurisdiction to handle everything that arises in a bankruptcy case." H.R.Rep. No. 595, 95th Cong., 1st Sess. 445 (1977), U.S.Code Cong. & Admin.News 1978, p. 6400.

The bankruptcy court, therefore, under the Bankruptcy Code has jurisdiction to determine the property question which the Supreme Court did not decide in *Phelps*.

The second ground for dismissal is puzzling. The court concedes that the debtor continues to have certain "legal or equitable interests" in the property, but concludes that the United States is under no obligation to return the property unless the tax liability is met because the United States, by virtue of the seizure, acquired a "significantly greater interest" than the debtor in the liquor license. The court does not reveal the criteria used to determine the extent of the government's interest but, more importantly, does not indicate how the concept of a "significantly greater interest" is imported into the Bankruptcy Code. There is nothing to suggest that the Bankruptcy Code adopts any such test as a condition for the application of Section 541 or Section 542. Admittedly, the State acquired an interest in the property by virtue of the seizure. However, the question is not whether the government acquired an interest in the property, or the extent of the interest, but whether the debtor continues to have an interest in the property, and whether it is property which the debtor may use, sell, or lease and which has more than "inconsequential value or benefit" to the debtor to justify the court directing that the property be returned to the debtor.

Since the court in *Bush* concedes that the debtor continued to have "legal or equitable interests" in the liquor license, Section 541 is obviously satisfied, and the only appropri-

---

and *Bennett* are materially different. The Court, in *Bennett*, had to decide the effect of the seizure of property by the government, and held that prior to sale the seizure did not divest the debtor of title to the property. In *Phelps*, that question was not present since the government took custody of cash proceeds. In *Phelps*, the court merely determined that by virtue of the seizure of cash proceeds, the government had constructive possession of that fund and that such possession was sufficient to deprive the bankruptcy court of jurisdiction. It was not material for the court to decide whether the debtor did or did not retain title in the cash proceeds.

**5.** For a discussion of the summary-plenary jurisdictional problems, see: In Chapter I–VII (straight bankruptcy) cases, 2 Collier on Bankruptcy, ¶ 23.02, pp. 438–442.1 (14th ed. 1978);

In Chapter 11 cases, 8 Collier on Bankruptcy, ¶ 3.01, pp. 149–150 (14th ed. 1978); In Chapter 10 cases, 6 Collier on Bankruptcy, ¶ 3.05, pp. 417–442 (14th ed. 1978).

**6.** Jurisdiction is conferred on the bankruptcy court by a two-step process. Subsection (a) of 28 U.S.C. § 1471 initially confers "original and exclusive jurisdiction of all cases under title 11" upon the district courts of the United States. Subsection (b) of § 1471 further provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." Subsection (c) of § 1471 then declares that the bankruptcy court in which a case is commenced "shall exercise all of the jurisdiction conferred . . . on the district courts."

ate inquiries under Section 542 are whether the liquor license was property that the debtor was able to use, sell, or lease under Section 363 and whether it had more than "inconsequential value or benefit" to the debtor.

Since Troy Industrial Catering Service, after seizure, retained its ownership interest in the property and since the property has substantial value to the debtor, as the debtor cannot operate the business without the property, it is subject to turnover pursuant to Section 542.

█ The only question that remains is whether the power to compel turnover should be exercised. A debtor may use, sell, or lease property of the estate in the ordinary course of business unless the court orders otherwise. § 363(c)(1). However, upon request of an entity that has an interest in property which the debtor proposes to use, sell, or lease, the court must prohibit or condition the proposed use, sale, or lease "as is necessary to provide adequate protection" for such entity. § 363(e). The term "adequate protection" is defined in Section 361. Since the debtor proposes to use the property now held by the State of Michigan, the turnover should not be compelled unless the debtor adequately protects the State within the meaning of Section 361.

The court has scheduled a status conference to determine the manner and the time within which the remaining issues are to be resolved.