**In re HUDSON VALLEY AMBULANCE SERVICE, INC., Debtor.**

**Bankruptcy No. 81 B 20204.**

United States Bankruptcy Court, S. D. New York.

June 11, 1981.

providing ambulance services principally in Orange and Rockland Counties in New York State. It also has authority to provide service in other counties as well. The major part of its business involves transportation of patients, for which payment is made by Blue Cross/Blue Shield of Greater New York or the Departments of Social Services of the counties in which transportation is furnished. Such payments are made pursuant to Medicare, Medicaid or private health policies.

On March 31, 1981 and April 1, 1981 immediately before the date when the debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on April 1, 1981, the Internal Revenue Service of the United States levied upon accounts receivable due to the debtor from Blue Cross/Blue Shield and from the County of Rockland, Department of Social Services. This was done in order to satisfy the debtor's delinquent federal tax liabilities, which the parties agreed amounted to $330,525.50. The Blue Cross/Blue Shield receivables total $38,-358.16. The Rockland County Department of Social Services owe the sum of $24,-164.86. Of the total receivables, namely $62,523.02, it was stipulated that $14,114.12 represent services performed by the debtor after the filing of its Chapter 11 petition. Accordingly, this court entered an order on June 4, 1981, that payment be made to the debtor, notwithstanding the I.R.S. levies. Thus the controversy here relates to the $48,405.90 which remain subject to the levies previously issued in connection with the debtor's past due tax liability of $330,-525.50.

The debtor argues that the levied upon accounts receivable are essential to its continued existence because it is unable to pay withholding taxes or Social Security payments, telephone service or the cost of gasoline to operate the ambulances needed in the business. The debtor has been threatened with a discontinuance of telephone and electric service. It cannot obtain gasoline for its vehicles nor can it continue to operate unless it meets its payrolls. Hence, it sought a turnover of the receivables cov-

John S. Martin, Jr., U. S. Atty., New York City, for government; Stuart M. Bernstein, Asst. U. S. Atty., New York City, of counsel.

Miller & Miller, Haverstraw, N. Y., for debtor.

## DECISION ON ORDER TO SHOW CAUSE RE TURNOVER OF MONIES DUE TO DEBTOR

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Once again the Bankruptcy Court is presented with the all too familiar conflict between the Government's right to collect unpaid taxes and a debtor-in-possession's need to use funds levied upon in order to attempt to rehabilitate its business operations on a profitable basis, notwithstanding its history of financial depression.

The debtor, Hudson Valley Ambulance Service, Inc., is engaged in the business of

ered by the levies on the ground that these funds are property of the estate within the meaning of Code § 541, which it desires to use in accordance with Code § 363, subject to the concept of adequate protection.

The Government argues that the debtor retains only limited rights with respect to these funds, and does not have the right of possession, which dooms its turnover application.

Code § 541(a)(1) defines the phrase "property of the estate" to consist of "all legal or equitable interests of the debtor in property as of the commencement of the case." Code § 542(a) then recites that an entity "in possession, custody, or control during the case, of property that the trustee may use, sell or lease under Section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property . . .". Additionally, Code § 363(c)(1) provides in part that if the business of the debtor is authorized to be operated under Section 1108 (as in the case of this debtor) then the debtor "may use *property of the estate* in the ordinary course of business without notice or a hearing." (Emphasis added)

The debtor contends that the accounts receivable covered by the pre-petition levies are "property of the estate" which it may use in accordance with Code § 363(c)(1), subject to its providing adequate protection, as required under Code § 363(e) to satisfy the restriction as to "cash collateral" stated in Code § 363(c)(2).

The Government concedes that the scope of Code § 541 is now broader than the predecessor provisions in Section 70(a) of the former Bankruptcy Act, in the sense that the debtor need not prove possession or constructive possession of property in order to obtain it for the benefit of the estate, as was required under *Phelps v. United States of America*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975). In that case it was held that the Government's levy and seizure resulted in the Government being an adverse claimant over whom the Bankruptcy Court had no summary jurisdiction because the debtor was not deemed to have constructive

possession of the funds. However, the Government observes that Code § 541 does not confer additional property interests on the debtor and that the estate acquires only the debtor's interests in property; it does not acquire interests greater than the debtor had, so that if the debtor's interests in property are limited, then the estate acquires only those limited interests. The legislative history with respect to Code § 541(a)(1) supports this conclusion:

> "Though this paragraph [§ 541(a)(1)] will include choses in action and claims by the debtor against others, *it is not intended to expand the debtor's rights against others more than they exist at the commencement of the case.*" [Emphasis added]

H.R.Rep.No.95–595, 95th Cong., 1st Sess., p. 467; S.Rep.No.95–989, 95th Cong., 2d Sess., p. 82, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868.

However, the Government did not have absolute title to the funds in question. As of the commencement of this case the debtor did have certain, albeit limited, rights in the property. The debtor had a right of redemption under 26 U.S.C. § 6337(a); the debtor was entitled to notice of sale with respect to the property in accordance with 26 U.S.C. § 6335(b); the debtor had a right to receive any surplus proceeds pursuant to 26 U.S.C. § 6342 and certainly the debtor would be entitled to all the levied funds if it later turned out that the assessment was invalid. Thus, the debtor still retained significant rights in the property in question. As stated in *Troy Industrial Catering Service v. Michigan*, 2 B.R. 521, 5 B.C.D. 1243 (Bkrtcy.E.D.Mich., 1980), "Seizure by the Secretary of Treasury is merely a step in the collection process." It should be noted that in the instant case there was no seizure; only the service of a levy.

While Code § 541(a)(1) does not expand the debtor's rights against others, Code § 542(a) does. A third party must now turn over to the debtor property that the debtor "may use, sell or lease under Section 363." Before the adoption of 28 U.S.C. § 1471(e), which gives the Bankruptcy Court jurisdic-

tion over all of the debtor's property, wherever located, a mortgagee who acquired possession through the appointment of a receiver could not only oust the Bankruptcy Court from exercising summary jurisdiction, *Emil v. Hanley,* 318 U.S. 515, 63 S.Ct. 687, 87 L.Ed. 594 (1942), but such secured creditor could proceed with the foreclosure unimpaired by the debtor's residual claim to use the property, as now exists under Code § 363, or the debtor's right to stay the foreclosure, as now expressed in Code § 362, or the debtor's right to a turnover of property of the estate, as is now authorized under Code §§ 542 and 543. Hence, it is not the broad definition of "property of the estate" that enlarges the debtor's rights; it is the fact that even limited rights are recognized as sufficient to classify the property affected by such rights as "property of the estate." The debtor's turnover rights are then derived from Code §§ 542 and 543, which require others, including custodians holding property of the estate, to turnover such property to the debtor, subject to the concept of adequate protection reflected in Code § 363(e).

The Government relies on three cases which support the proposition that the debtor's limited rights after the I.R.S. levy and seizure do not include the debtor's right to use, sell or lease the levied property and therefore the I.R.S. may not be ordered to turn over the levied property under Code § 542. *In re Avery Health Center, Inc.,* 8 B.R. 1016, 7 B.C.D. 210 (D.C.W.D.N.Y.1981); *In re Winfrey Structural Concrete Co.,* 5 B.R. 389, 6 B.C.D. 695 (Bkrtcy.D.Col.1980); and *In re Parker GMC Truck Sales, Inc.,* 6 B.C.D. 899 (S.D.Ind.1980). These three cases, plus a fourth and a more recent case which the Government did not cite, *In re Donald Calhoun Douglas,* 10 B.R. 283, 7 B.C.D. 690 (Bkrtcy.N.D.Neb.1981) all involve the actual seizure of inventory and equipment. As previously noted, there was no seizure in this case and the property in question concerns cash proceeds under accounts receivable. These four courts found that the debtor had no right to possession of the seized property. Indeed, in the *Winfrey* case, supra, ·the court noted

that the seizure of property is "tantamount" to a transfer of ownership, citing *U. S. v. Pittman,* 449 F.2d 623, 626 (7 Cir. 1971). However it is clear that the concept of "property of the estate" is not concerned with who has title or possession; it expressly embraces all legal or equitable interests of the debtor in property wherever located, as of the commencement of the case. Nevertheless, all four cases concluded that the debtor's right of possession or use were interests in property which the debtor did not have at the commencement of the case and therefore could not be restored after the filing of the petition. However, all cases agree that the debtor retained significant other interests in the property in question. In the *Avery* case, supra, the court opined that the Government's right to sell the seized property "may fall within the purview of 11 U.S.C. § 362(a)(6)" and that it might have to seek relief in the Bankruptcy Court with respect to the automatic stay provisions. This would then reintroduce the concept of adequate protection, as expressed in Code § 362(d)(1). Indeed, a Bankruptcy Court in the same district as the *Avery* case recently held that the automatic stay was applicable to property physically seized by the I.R.S. and regarded the I.R.S. as a custodian within the meaning of Code § 101(10)(C), subject to the turnover provisions of Code § 543 and the obligation to provide adequate protection under Code § 363(e). *In re Whiting Pools, Inc.,* 10 B.R. 755, 7 B.C.D. 658 (W.D.N.Y.1981).

■ In this case no property has been seized. The I.R.S. has issued levies against accounts receivable in the nature of cash proceeds. However, this feature alone should not be determinative in resolving the controversy between the parties. What is important is that even as viewed by the authorities cited by the Government the debtor retains significant rights with respect to the property in question. These rights are sufficient to bring the property within the pale of "property of the estate" for purposes of Code § 541. Once it is determined that the property in question is "property of the estate", it does not matter

that the I.R.S. has custody of the property any more than it would if a state court receiver had actual possession in behalf of a mortgagee; the question of turnover and parties' entitlement to the protection of their interests are then resolved in the light of principles under the Bankruptcy Code and the concept of adequate protection. *In re Whiting Pools, Inc.,* supra.

■ The important distinction which the Government's cited cases ignore is that Code § 363 does not require that a debtor must first have a right to use, sell or lease property of the estate before the debtor may do so. As long as the property in question is deemed "property of the estate" the debtor is given such right under Code § 363. Thus, Code § 363(c)(1), in dealing with a debtor-in-possession, states that it "may use property of the estate in the ordinary course of business without notice of a hearing." Such right is authorized under Code § 363, subject to providing adequate protection under subsection (e).

In *Avery Health Center, Inc.,* supra, the court stated in footnote # 12 that Code § 542 does not come into play unless the trustee has a right to use, sell or lease the property in question. However, Code § 363 gives the trustee or debtor-in-possession that right as long as the property in question is "property of the estate." Therefore, once it is determined that the debtor has sufficient interests in the levied upon accounts receivable, in the context of "property of the estate," it necessarily follows that the debtor may then invoke the rights conferred under Code § 363 as a basis for the turnover under Code § 542.

In a strikingly similar case, *In re Cross Electric Company v. U. S.,* 512 F.Supp. 511, 6 B.C.D. 1348 (W.D.Va.1980), the District Court affirmed the Bankruptcy Court's order directing the I.R.S. to turn over the debtor's accounts receivable that had been levied upon because they were property of the estate and could be used by the debtor if it provided adequate protection. The District Court stated (512 F.Supp. 511, 6 B.C.D. p. 1351):

"Once it has been determined that the debtor has interests in certain property, 11 U.S.C. § 542 comes into play. An entity which has possession, custody or control over property, that the trustee may use, sell or lease shall deliver that property to the trustee unless it is of inconsequential value or benefit to the estate."

See also, *In re Troy Industrial Catering Service,* 2 B.R. 521, 5 B.C.D. 1243 (Bkrtcy.E. D.Mich.1980); *In re Aurora Cord and Cable Company,* 2 B.R. 342, 5 B.C.D. 1310 (Bkrtcy. N.D.Ill.1980); *In re Whiting Pools, Inc.,* supra; *In re Birco Mining Company, Inc.,* 10 B.R. 545, 7 B.C.D. 662 (N.D.Ala.1981).

In *Community Hospital of Rockland County,* 5 B.R. 7, 5 B.C.D. 115 (Bkrtcy.S.D. N.Y.1979) aff'd 5 B.R. 11, 5 B.C.D. 1172 (D.C.S.D.N.Y.1979), this court sustained the Government's claim of sovereign immunity with respect to funds upon which it had levied because the debtor did not seek a turnover under Code § 542. The debtor could not do so because it was in no position to offer adequate protection to the I.R.S. and therefore expressly eschewed Code § 542, attempting instead to avoid the tax lien under Code § 724. This court held that Code § 724 applied only in liquidation cases and was made inapplicable by Code § 103(b) to Chapter 11 cases.

In this case, the debtor expressly seeks a turnover under Code § 542, and argues that the Government is adequately protected to the extent of the debtor's equity in its real estate.

Since the debtor has sufficient interests in the accounts receivable included under the Government's levy to justify regarding the accounts as "property of the estate", it follows that Code § 363 permits the debtor to use such accounts subject to providing adequate protection. Hence, by reason of the authority to use the accounts as conditioned under Code § 363, the debtor has sustained its right to invoke Code § 542 in order to seek a turnover, also subject to the concept of adequate protection. There then remains the question of fact as to whether or not the debtor has offered adequate protection, within the meaning of Code § 361.

## FINDINGS OF FACT

1. The debtor operates out of a building which it owns on Broadway in Haverstraw, New York. The building is a five-room office complex, consisting of approximately 9308 square feet. The real estate measures approximately 1.8375 acres in an area zoned as "planned industrial."

2. The debtor's real estate expert valued the property on the basis of an income approach. He estimated that a net rate lease could produce an income for this building at the rate of $4.00 per square foot. He said the comparable property in the area rented for between $2.75 to $5.00 per square foot. Therefore, without any additional improvements the building should be worth approximately $360,000. However, if a shell structure adjacent to the building, consisting of four walls and no roof were improved at an estimated cost of $30,000 it could perhaps be rented for $2 per square foot, according to the debtor's appraiser, and bring in an additional $10,000 per year. Moreover, the debtor's expert believed that if the debtor were to rent its vacant space adjacent to the building for the storage of about ten trucks, another $500 to $600 per year could be realized. Therefore instead of capitalizing the $36,000 per year, which the debtor's expert multiplied by 10 years to arrive at the $360,000 valuation, the debtor's expert assumed a $49,000 net income, which he said resulted in a $490,000 valuation.

3. The property is encumbered by three mortgages aggregating $60,649.42.

4. The Government's expert appraiser used the method of cost to replace less depreciation and arrived at a value of $190,000. He also used a capitalization of income method and arrived at a value of $170,000. Taking an average between the two figures, he concluded that the property was worth $180,000, which is one-half the figure arrived at by the debtor's expert, exclusive of future improvements.

5. The property is presently assessed for $23,170.

6. In determining whether or not the Government is adequately protected, consideration must be given to what the property is worth now to a secured creditor and not what it might be worth if additional funds are invested to repair and improve the property. Surely the court cannot speculate as to future contingencies when the debtor has not shown that it is financially capable of capital improvements. Moreover the debtor's figures are based on highest and best use for the premises. There is no proof that anyone is willing to store trucks on the debtor's premises or that tenants are available at the rents projected.

7. Assuming that the debtor could rent the present structure for $4 per square foot, (which appears to be overly optimistic) the present value would be $360,000 according to the debtor's expert. Deducting the three mortgages totalling $60,649.42, there remains a current equity cushion of $299,350.58.

8. An equity of $299,350.58, accepting the debtor's valuation method for present value, is clearly insufficient protection when compared with a conceded tax liability of $330,525.50.

9. Apparently the debtor is not in any position to offer substantial periodic payments in reduction of its tax liability and therefore it has not made such an offer. Nor does it have any other unencumbered property with respect to which an additional or replacement lien of substantial value could be offered to the I.R.S. as adequate protection for its tax lien of $330,525.50.

## CONCLUSIONS OF LAW

1. The debtor has sufficient residual property interests in the accounts receivable levied upon by the I.R.S. so that the accounts are deemed "property of the estate" within the meaning of Code § 541 which accounts may be used by the debtor pursuant to Code § 363, subject to providing adequate protection as required under Code § 363(e). Accordingly, the debtor may invoke the turnover rights under Code § 542.

2. The debtor has not shown that its equity cushion in its real estate will adequately protect the I.R.S. if it were ordered under Code § 542 to turn over the debtor's accounts receivable upon which it levied prior to the filing of the debtor's Chapter 11 petition.

3. The debtor's application for a turnover order of the receivables covered by the levies is denied.