**In the Matter of COMMUNITY HOSPITAL OF ROCKLAND COUNTY, Debtor.**

**Bankruptcy No. 79 B 20074.
Adv. No. 81–6036.**

United States Bankruptcy Court,
S. D. New York.

Dec. 7, 1981.

Harvey S. Barr, Spring Valley, N. Y., Trustee.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for I.R.S.; Stuart M. Bernstein, Asst. U. S. Atty., New York City, of counsel.

## DECISION ON NOTICE OF MOTION TO DISMISS THE TRUSTEE'S COMPLAINT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The United States Internal Revenue Service ("IRS") seeks to dismiss the claim asserted by the trustee in bankruptcy in this converted Chapter 7 case. The trustee charges that IRS received a preference when it collected certain taxes pursuant to a pre-petition notice of tax levy because the IRS tax lien should be subordinated to priority administration expenses and wage claims, as described in Code § 724(b)(2). IRS reasons that the trustee's claim should be dismissed because this court's prior determination in the aborted Chapter 11 case is res judicata, and also because Code § 106(c) does not provide for a waiver of its sovereign immunity with respect to the trustee's preference claim.

## PRIOR PROCEEDINGS

The debtor, Community Hospital of Rockland County, filed a petition under Chapter 11 of the Bankruptcy Code on December 4, 1979. Immediately prior to that time (between November 14, 1979 and December 5, 1979), IRS had served notices of tax levy on the debtor's obligors (various medical insurance institutions) in order to collect a tax indebtedness in excess of $700,000. The debtor commenced an adversary proceeding against IRS in order to recover sufficient monies to meet its impending payroll. The debtor's complaint asserted three causes of action. In the first cause of action the debtor sought a determination that the tax liens were subordinated to the wage claims pursuant to Code §§ 724(b) and 507 and that the debtor was therefore entitled to recover the amount necessary to meet the payroll. The second cause of action alleged that the levies were a preference within the meaning of Code § 547 which the debtor could recover. The third cause of action sought a determination that the levies did not reach claims which were authorized for payment after the dates of service.

The court conducted a trial on the following day, at which time the debtor proceeded solely on the subordination theory under Code § 724(b), as set forth in the first cause of action. In a decision the same day the court dismissed the complaint, ruling that Code § 103(b) made Code § 724(b) inapplicable to Chapter 11 reorganization cases. The court also concluded, alternatively, that since the Government had not filed any claim in this case, it could properly assert that the limited waiver of sovereign immunity with respect to compulsory counterclaims and offsets, as expressed in subsections (a) and (b) of Code § 106, did not strip it of sovereign immunity with respect to the subordination theory asserted in the debtor's first (and only litigated) cause of action. *In re Community Hospital of Rockland County,* 5 B.R. 7 (Bkrtcy.S.D.N.Y. 1979).

On the same day, the debtor filed a notice of appeal to the district court. The appeal was heard and determined the next day. The district court affirmed this court's dismissal of the first cause of action, declaring that Code § 724 was available only in liquidation cases under Chapter 7 and not in reorganizations under Chapter 11. The district court also affirmed this court's alternative ruling that since the Government did not file a claim it did not waive its sovereign immunity with respect to the subordination claim asserted in the debtor's first cause of action. *In re Community Hospital of Rockland County,* 5 B.R. 11 (Bkrtcy.S.D. N.Y.1980).

## PRESENT PROCEEDINGS

The debtor was unable to continue operations under Chapter 11 and therefore an order was entered by this court on June 4, 1980 converting this case to Chapter 7 for

liquidation. The trustee in bankruptcy was then appointed by the United States Trustee, pursuant to Code § 15701(a). The trustee claims that since Code § 724 is now applicable to this Chapter 7 case, the IRS tax levies should be subordinated to the priority claims under Code § 507. Of the $87,876.68 covered by the levies, $38,502.89 was received during the month immediately prior to the filing of the Chapter 11 petition; $57,201.19 was received after the filing of the Chapter 11 petition, but before the conversion to a Chapter 7 case on June 4, 1980, and $2,172.60 was received after the conversion. The trustee further argues that levies prior to the filing of the Chapter 11 petition were preferentially in violation of the distribution scheme contemplated under Code § 724 and that the funds collected after the commencement of the Chapter 11 case are property of the estate held by IRS as a custodian and must be turned over to the trustee in accordance with Code § 543.

## RES JUDICATA AS TO CODE § 724

■ A final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). The doctrine of *res judicata* prevents litigation of all grounds for recovery or defenses that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). In the prior litigation between the debtor and IRS, this court ruled that the subordination theory underlying Code § 724 was not available to a debtor in a Chapter 11 reorganization case because it was expressly limited to a trustee in bankruptcy in a liquidation case under Chapter 7. Now that the trustee in bankruptcy seeks relief under Code § 724 in this Chapter 7 case, he is met with the defense that this court's prior decision precludes the trustee from asserting the subordination requirement under Code § 724. Manifestly, Code § 724 was not previously available to the trustee in the Chapter 11 case, nor was this section available to his predecessor in interest, the debtor-in-possession in that case. Although the trustee replaced the debtor-in-possession so that they are in privity to the extent that their interests coincide, their objectives, nevertheless, are different; the debtor-in-possession seeks to continue its economic life under the aegis of a reorganization, whereas the trustee in bankruptcy aims to terminate the estate's existence and distribute the property of the estate in accordance with the concept of equality of distribution. To the extent that tax liens are not subordinated to priority claims, as required under Code § 724, the statutory design for equality of distribution will be frustrated. Therefore the trustee in bankruptcy should not be barred from insisting upon compliance with Code § 724 merely because this court's previous determination between the debtor-in-possession and IRS dismissed the erstwhile debtor's improper attempt to utilize this same section in a reorganization case under Chapter 11.

The Government's reliance upon *Teltronics Services, Inc. v. L. M. Ericson Telecommunications, Inc.*, 642 F.2d 31 (2d Cir. 1981) is misplaced. In that case the trustee in bankruptcy was bound by a prior dismissal of the debtor's antitrust claim and could not rely upon the inexperience of the debtor's former counsel. Judge Mulligan observed that "no case has been cited or discovered where relief from *res judicata* principles has been granted simply because the plaintiff was represented by inexperienced counsel" (Page 36). The emergence on the scene of a trustee in bankruptcy was also insufficient basis to liberate him from the *res judicata* effects of an assertable cause of action in the prior litigation. However, in this case the subordination claim under Code § 724 was not assertable in the Chapter 11 case. Thus, the operable facts are different and *res judicata* is not a bar to the trustee's obligation to liquidate and distribute in accordance with the statutory scheme mandated by Congress.

## RES JUDICATA AS TO SOVEREIGN IMMUNITY

In this court's earlier decision on December 27, 1979, which was affirmed by the

district court on January 2, 1980, it was ruled that the limited waiver of immunity expressed in subsections (a) and (b) of Code § 106 did not apply because the Government did not file a claim against which a compulsory counterclaim or offset could be asserted. Subsection (c) was not considered because the debtor sought to obtain the levied funds solely under Code § 724, which was held inapplicable. The Government's claim of sovereign immunity was sustained because the debtor did not seek a turnover under Code § 542. This point was explained in *In re Hudson Valley Ambulance Service, Inc.*, 11 B.R. 860, 864 (Bkrtcy.S.D. N.Y.1981), where this court held that accounts receivable levied upon by the IRS were "property of the estate", within the meaning of Code § 541, which may be used by the debtor pursuant to Code § 363, subject to providing adequate protection as required under Code § 363(e). In the instant case the erstwhile debtor could not rely upon Code § 542 because it was in no position to offer adequate protection to the IRS. It, therefore, impermissibly relied upon Code § 724.

■ The debtor could not recover the pre-petition levied funds as a preferential transfer because Code § 547(c)(6) expressly excludes from the definition of preferences the fixing of statutory liens that are not avoidable under Code § 545. Tax liens, other than inventory, are not avoidable under Code § 545 because they are not the sort of liens that first become effective upon bankruptcy or insolvency, as proscribed under Code § 545. Therefore, since the IRS lien affords a validly secured status, the satisfaction of the lien by levying against the debtor's obligors did not constitute a preference in the Chapter 11 case. Payment to a secured creditor is generally not a preference unless another secured creditor in the same class is prejudiced. *In re Castillo*, 7 B.R. 135, 137 (Bkrtcy.S.D.N.Y. 1980).

The possibility of asserting a preference over priority creditors as a result of non-compliance with the subordination of tax liens under Code § 724 was not available to the debtor-in-possession in the Chapter 11 case. The trustee's preference claim in this Chapter 7 case would be limited to the extent of the priority claims to which the tax lien would be subordinated.

■ There is significant merit to the trustee's position that a cause of action exists to recover as a preferential transfer tax payments made within ninety days of the filing of a bankruptcy petition. While the satisfaction of a validly secured lien is generally not a preference, the violation of the scheme of distribution contemplated by the Bankruptcy Code, including the subordination of valid tax liens to priority claims and administration expenses, as reflected under Code § 724(b), could conceivably constitute a voidable preference. This point was succinctly stated in 4 *Collier on Bankruptcy* ¶ 547.42, page 547, 130 (Fifteenth Ed. 1979);

"Payments in satisfaction of valid statutory liens are not excepted from the preference section. Typically, the holder of a statutory lien that is not avoidable under section 545 will normally hold a secured claim so that payment in satisfaction of such a claim will not have a preferential effect under section 547(b)(5). However, where the lien is avoided or voidable under section 506(d), 548, or 724(a), or where the lien is subordinated under section 510(c)(2), 724(b), or 724(d), the payment in satisfaction of the lien may create a preferential transfer. The preference will result when the elements of section 547(b)(1)–(4) are met and the holders of the lien receives more on account of the satisfaction of the lien than would have been received had the transfer not been made and the estate was liquidated under chapter 7."

Similarly, this point was expressed in 2 *Norton Bankruptcy Law and Practice*, § 32.26, page 80, as follows:

"In many cases, payments made to satisfy a valid statutory lien will not be avoidable under Code § 547. This will often be true when the collateral affected by the lien exceeds or equals the outstanding liability owed. In that case,

since a statutory lien valid under Code § 545 is entitled to enforcement, the payments generate no preferential effect.

There is some question, however, concerning payments made to satisfy a tax debt that is secured by a tax lien that is valid in bankruptcy. In a liquidation case, such a tax lien is subordinated in a bankruptcy distribution to claims receiving the first five levels or priority in a bankruptcy liquidation. Thus, even if the tax lien is attached to property of equal or greater value than the tax liability, the tax claim may not be entitled to full payment in bankruptcy. If this eventuality ensues, payments made in satisfaction of the tax claim may in fact have a preferential effect and, if other elements of a preference are present, they may be avoidable in bankruptcy under Code § 547."

The amenability of the Government under Code § 106(c) was never addressed by this court since the debtor did not, nor could not, take advantage of its reach. In referring to this court's December 27, 1979 decision, Judge Brody, in *In re Remke Inc.*, 5 B.R. 299 (Bkrtcy. C.B.C. E.D. Mich.1980) correctly noted: "The issue of whether subsection (c) of section 106 requires that a government unit file a proof of claim before sovereign immunity is waived, was never reached." That issue is now reached because *res judicata* is no bar to the trustee's right to assert that the IRS received a preferential transfer.

### WAIVER OF IMMUNITY UNDER CODE § 106(c)

■ The Government argues that subsection (c) of Code § 106 does not waive sovereign immunity for an action under Code § 547 unless the requirements of subsection (a) and (b) are met, i.e., that the Government files a proof of claim, which was not done in this case. Hence, the Government reasons that the word "creditor" in Code § 547 applies to the Government only if a proof of claim has been filed, because any other construction would render the "except as provided" language of subsection (c) meaningless. This argument lacks persuasiveness. It is evident that when the Government files a claim subsections (a) and (b) of Code § 106 provide for a limited waiver of sovereign immunity with respect to the estate's counterclaims and offsets. Such counterclaims and offsets need have no relationship to the trustee's avoiding powers and may be bottomed on non-bankruptcy statutory or common law rights which could not otherwise form the basis for a law suit against the Government because of the sovereign immunity doctrine. The legislative history reflects that the Government should not receive distribution from an estate without subjecting itself to any liability it has to the estate. "The counterclaim by the estate against the governmental unit is *without limit*" (Emphasis added) H.R.No. 95–595, 95th Cong., 1st Sess. (1977) p. 317; S.R.No. 95–989, 2d Sess. (1978) p. 29 U.S.Code Cong. & Admin.News 1978, pp. 5787, 5815, 6274.

However, subsection (c) of Code § 106 was intended to permit a trustee or debtor-in-possession to assert the avoiding powers found in the Bankruptcy Code against a governmental unit. Thus, the use of the terms "creditor", "entity" or "governmental unit" are to be applied interchangeably with respect to the Government's amenability to the avoiding powers, notwithstanding any assertion of sovereign immunity. Indeed, the legislative history reflects the following statement:

"As provided, section 106(c) of the House amendment overrules contrary language in the House report with the result that the Government is subject to avoidance of preferential transfers." 125 Cong.Rec.H. 11,097 (Sept. 28, 1978); S. 17,414 (Oct. 6, 1978).

Judge Brody, in *In re Remke Inc.*, supra, concluded that subsection (c) waived the defense of sovereign immunity and subjected the Government to a trustee's action to recover a preferential transfer even though the Government had not filed a claim. There is no language in subsection (c) requiring the Government to file a claim as a condition precedent to the waiver of sovereign immunity with respect to the avoiding

powers. Therefore this court will not include language that Congress saw fit to exclude.

It should be noted that it appears that more than half the funds that were collected by IRS were received after the commencement of the Chapter 11 case, and in violation of the automatic stay under Code § 362(a). Even before the adoption of the Bankruptcy Code it was clear that under the former Bankruptcy Act the IRS could not collect a bankrupt's funds after the filing of a petition in bankruptcy. The collection of taxes was enjoined in order to protect the Bankruptcy Court's jurisdiction and to allow the administration of the bankrupt's estate in an orderly and efficient manner in order to fulfill the ultimate policy favoring equality of distribution. See *Bostwick v. United States*, 521 F.2d 741 at 744 (5 Cir. 1975). Under the Bankruptcy Code the IRS may not proceed beyond the issuance of a notice of tax deficiency, which is allowed as an exception under Code § 362(b)(8). The issuance of a deficiency notice benefits the debtor since the debtor may not apply to the Tax Court without first having received such notice. See 124 *Cong.Rec.* H 11,866 (Sept. 28, 1978); S 17,-426 (Oct. 6, 1978). See also 1 *Norton Bankruptcy Law and Practice*, § 20.21. However, upon the commencement of the Chapter 11 case the Government was stayed by Code § 362(a) from collecting the funds from the debtor's obligors, since such funds constituted property of the estate under Code § 541. See *In re Hudson Valley Ambulance Service*, 11 B.R. 860 (Bkrtcy.S.D.N.Y.1981); *In re Babiarz*, 5 B.R. 701 (Bkrtcy.W.D.N.Y.1980).

The Government's motion to dismiss the trustee's complaint under Bankruptcy Rule 712 for failing to state a claim for relief is denied.

IT IS SO ORDERED.