In the Matter of WILLINGTON CONVA-
LESCENT HOME, INC., Debtor.

Martin W. HOFFMAN, Trustee,
Plaintiff,

v.

STATE OF CONNECTICUT, Department
of Income Maintenance, Department
of Health Services, Defendant.

Bankruptcy No. 2-82-00508.
Adv. No. 2-84-0007.

United States Bankruptcy Court,
D. Connecticut.

April 25, 1984.

Martin W. Hoffman, Hartford, Conn., for trustee, plaintiff.

Kenneth A. Graham, and Arnold I. Menchel, Asst. Attys. Gen., State of Conn., Hartford, Conn., for Connecticut Dept. of Income Maintenance, defendant.

Stanley K. Peck, Asst. Atty. Gen., State of Conn., Hartford, Conn., for Connecticut Dept. of Health Services, defendant.

## MEMORANDUM AND ORDER

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

### ISSUES

This proceeding raises complex issues of constitutional dimension where there is conflicting authority in the courts and no controlling precedent in this circuit. The court is first called upon to resolve the intent of Congress, and the power of Congress to implement that intent, in the Bankruptcy Code provisions which impinge upon the sovereign immunities enjoyed by a State. Thereafter, the court must determine the consequences of the filing of a bankruptcy petition upon the right of a State, postpetition, to "recoup" for prepetition Medicaid overpayments under a Medicaid contract between a State and a debtor convalescent home.

### II.

### BACKGROUND

Willington Convalescent Home, Inc., (debtor), filed a chapter 11 petition on June 2, 1982. At that time, the debtor was a state-licensed skilled nursing facility and a provider-participant in the Connecticut Medicaid program. Under that program, the debtor periodically contracted with the Connecticut Department of Income Maintenance, (Connecticut), to provide patient-care services to indigent persons at a per diem rate payable by Connecticut. After the filing of the bankruptcy petition, the debtor's existing provider agreement (contract) was not presented to the bankruptcy court for assumption or rejection. The daily rates paid by Connecticut under such contracts are subject to review and recomputation upon audit of the books of a provider-participant. After such an audit, Connecticut concluded in rate decisions issued in February and August, 1982, that the debtor had utilized unallowable costs to support its per diem rate and that the debtor owed it monies representing overpayment by Connecticut for Medicaid patients for the years commencing July 1, 1976. through 1980. In the spring of 1983, the debtor ceased operation as a convalescent home and the court, on July 27, 1983, converted the case to one under chapter 7 and appointed Martin W. Hoffman as trustee. On January 3, 1984, the trustee filed a complaint in this court against the Connecticut Department of Income Maintenance and Department of Health Services seeking $64,010.24 money damages for services rendered under the Medicaid program during the month of March, 1983, for which no remittance had been received. Connecticut admits the rendering of the services but claims that by virtue of the contract between it and the debtor and the implementing regulations,[1] it is entitled to recoup the past Medicaid overpayments and not pay the trustee. Connecticut has not filed a proof of claim against this estate although

---

1. Section 17–311–53 of the regulations adopted by Connecticut to apply to the Medicaid cost-related reimbursement system provides, in part, as follows:

(b) Whenever the commissioner of Income Maintenance renders a rate decision, whether based upon a field audit or otherwise, which decision results in the facility being indebted to the Department of Income Maintenance for past medicaid overpayments, the Department shall recoup said medicaid overpayments as soon as possible from the Department's monthly medicaid payments to the facility....

(c) In a recoupment situation, the Department of Income Maintenance shall determine a recoupment schedule of amounts to be recouped from the facility's monthly medicaid payments after consideration of the following factors:

(1) the amount of the indebtedness;
(2) the objective of completion of total recoupment of past medicaid overpayments as soon as possible;
(3) the cash flow of the facility; and
(4) any other factors brought to the attention of the department by the facility relative to the provider's ability to function after recoupment.

(d) Whenever a facility has received past medicaid overpayments, the Department may recoup the amount of such medicaid overpayments from the monthly medicaid payments to the facility regardless of any intervening change in ownership.

784

it asserts that it is still owed $121,408.82 based upon overpayments to the debtor. By such noninvolvement with the estate,[2] Connecticut asserts that both its common-law sovereign immunity and its immunity under the Eleventh Amendment[3] to the United States Constitution bar a federal bankruptcy court from entering any judgment against it. These issues have been raised by Connecticut through a motion to dismiss the trustee's complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), made applicable by Fed.R. Bankr.P. 7012(b). The foregoing statement of facts has been derived from the affidavits and memoranda filed by Connecticut and the trustee. Those parties agree that the record is sufficient for the purposes of a court ruling.[4]

## III.

### SOVEREIGN IMMUNITY

The question here is the extent to which Congress did or could abrogate the common-law immunity and the immunity from suit enjoyed by a State under the Eleventh Amendment of the United States Constitu-

tion, when Congress enacted § 106 of the Bankruptcy Code of 1978,[5] pursuant to the power conferred by Art. I, § 8 of the Constitution (the Bankruptcy Clause).[6]

Connecticut phrases its position in its motion to dismiss as follows:

The Eleventh Amendment to the Constitution of the United States operates as a bar to the trustee's complaint because the entirety of said complaint seeks retroactive pecuniary relief from a federal court against a state government where the state has not waived its Eleventh Amendment immunity.

The sovereign immunity enjoyed by the State of Connecticut operates as a bar to the trustee's complaint as the defendant State Agencies have filed no claim against debtor's estate, no objection to discharge, no request for affirmative relief from the bankruptcy court and are not the plaintiffs in any other forum pursuing a claim against the debtor's estate.

Connecticut's Motion at 2.

■ It is clear that the debtor could not have brought this suit in a federal court in a nonbankruptcy context. *Department of*

---

2. The Connecticut Department of Labor and Department of Revenue Service have filed proofs of claim seeking priority status for unpaid prepetition employment compensation taxes ($2,946.00) and unpaid prepetition corporation business taxes ($61.06), respectively, but the trustee has made no argument concerning these filings.

3. The Eleventh Amendment provides:
The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State.
U.S. Const. Amend. XI, U.S.C.A. (West 1972).

4. Fed.R.Civ.P. 12(b) provides that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment ...."

5. *11 U.S.C. § 106—Waiver of sovereign immunity.*

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.
(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.
(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—
(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and
(2) a determination by the court of an issue arising under such a provision binds governmental units.
11 U.S.C.A. § 106 (West 1979).

6. The Congress shall have Power ... to establish ... uniform Laws on the subject of Bankruptcies throughout the United States....
U.S. Const. Art. I, § 8, U.S.C.A. (West 1968).

*Health v. Florida Nursing Home Assn.,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981). (A State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment in the federal courts; a State's participation in Medicaid programs likewise is not a waiver.) It is also clear that under the prior Bankruptcy Act the Eleventh Amendment would have barred the trustee's suit in a federal court. *In re Friendship Medical Center, Ltd.,* 710 F.2d 1297 (7th Cir.1983) (When State has filed claim against estate Federal court cannot adjudicate cause of action against State payable out of State treasury if cause of action does not arise from same transaction as claim); *State of Ohio v. Madeline Marie Nursing Homes,* 694 F.2d 449 (6th Cir.1982) (Same).

The effect of the enactment of § 106(c) on suits of this type is not clear from a review of the decisions in the bankruptcy courts to date. Courts have uniformly held that § 106(c) waives the sovereign immunity of the federal government as to suits for retrospective money damages. *See, e.g., Remke, Inc. v. United States (Matter of Remke, Inc.),* 5 B.R. 299 (Bkrtcy.E.D.Mich. 1980) (Preference action against I.R.S.). *Ellenberg v. Dekalb County (In re Maytag Sales and Service, Inc.),* 23 B.R. 384, 9 B.C.D. 908, 7 C.B.C.2d 405 (Bkrtcy.N.D.Ga. 1982), holds, in the alternative, that § 106(c) waives any alleged sovereign immunity of a Georgia county in a preference action. *Cf.* C.A. Wright, *Law of Federal Courts,* § 46 at 274 (4th ed. 1983) (Counties do not share States' Eleventh Amendment immunity). When a State has filed a claim against the estate, bankruptcy courts have held that § 106(a) and (b) authorize suits within that court against the State for retrospective monetary relief. *See, e.g., In re Greenwald,* 33 B.R. 607 (Bkrtcy.S.D.N.Y. 1983) (Section 106(b) set-off of debtor's, nursing home's, claim for Medicaid reimbursement from State Department of Health against claim filed by Department against estate not barred by Eleventh Amendment); *Ehre v. People of the State of New York (In re Adirondack Ry. Corp.),* 28 B.R. 251, 10 B.C.D. 256 (Bkrtcy.

N.D.N.Y.1983) (Debtor's claim for payments from State on construction contract arose from the same transaction as State's claim for withholdings from employee salaries and sales tax on materials used by debtor to perform contract; State's sovereign immunity waived pursuant to § 106(a)). And bankruptcy courts have taken jurisdiction over § 542(a) turnover actions against a State, without any discussion of the Eleventh Amendment or State consent. *See, e.g., Aegean Fare, Inc. v. Commonwealth of Massachusetts (In re Aegean Fare, Inc.),* 33 B.R. 745 (Bkrtcy.D. Mass.1983); *Troy Indus. Catering Service v. State of Michigan (Matter of Troy Indus. Catering Service),* 2 B.R. 521, 5 B.C.D. 1243, 1 C.B.C.2d 321 (Bkrtcy.E.D. Mich.1980). *See also United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (I.R.S. is "entity" subject to § 542(a) turnover order). Connecticut relies upon three bankruptcy court opinions which hold that § 106(c) does not, by its terms, authorize bankruptcy court suits by the estate for retrospective monetary relief against a State which has not filed a claim or otherwise consented to jurisdiction. *See Regal Const. Co., Inc. v. State of Maryland (In re Regal Const. Co., Inc.),* 18 B.R. 353, 357, 6 C.B.C.2d 187, 191 (Bkrtcy.D.Md.1982) ("[T]he Bankruptcy Code contains no indication that Congress intended to overturn Eleventh Amendment immunity, even if it could"); *Swayne v. State of Washington (Matter of Crum),* 20 B.R. 160, 161, 9 B.C.D. 183, 184, 6 C.B.C.2d 868, 869 (Bkrtcy.D.Idaho 1982) ("The only exceptions to the operation of the amendment arise when the State consents to such suit or waives the protection of the 11th Amendment, which Washington has not done here ..."); *Cohen v. Illinois Department of Public Aid (In re Ramos),* 12 B.R. 250, 251, 7 B.C.D. 1114, 1115, 4 C.B.C.2d 1016, 1017 (Bkrtcy.N.D.Ill.1981) ("[Section 106] does not operate as a waiver ... of Illinois' sovereign immunity absent action by Illinois or one of the State's agencies or departments.") Since there is no control-

ling precedent in this circuit and the cases from other jurisdictions are not uniform in their analysis, a careful examination of the underpinnings of § 106 is in order to determine whether or not Congress intended to authorize suits of this type and, if it did, whether or not Congress had the power under the Constitution to enact such an authorization.

### A.
### § 106 and Legislative History

■ Section 106(c) provides:

[N]otwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C.A. § 106(c) (West 1979). "Governmental unit" is a term defined elsewhere in the Code and

means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency or instrumentality of the United States, a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government
. . . .

11 U.S.C.A. § 101(21) (West 1979).

One of the Code provisions which is addressed to an "entity" is § 542(b) which provides:

[A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

11 U.S.C.A. § 542(b) (West 1979). Thus, Congress has expressly provided that a State is bound by a court judgment ordering it to make payment of a matured debt and a defense of sovereign immunity

against a suit brought by a trustee is unavailing.

Connecticut argues the foregoing statutory construction renders § 106(a) and (b) surplussage. *See In re Regal Const. Co., Inc.*, 18 B.R. at 357, 6 C.B.C.2d at 191. As noted, § 106(c) by its terms is to be read only with Code provisions addressed to "creditor[s]," "enti[ties]" or "governmental unit[s]." Not all Code provisions are so addressed. Sections 545 (statutory liens) and 549 (post-petition transfers) are outside the scope of § 106(c)(1). On the other hand, § 106(a) and (b) apply to all Code provisions. Thus, there is room for the operation of § 106(a) and (b) under this construction of § 106(c).

■ Possibly the above construction of § 106 is too technical and simplistic an answer to Connecticut's "surplusage" argument. However, even if the above construction of § 106(c) were to render § 106(a) and (b) surplusage, that result would not be an insuperable obstacle to that construction. As the Supreme Court has noted in another context, "[E]ven the most basic general principles of statutory construction must yield to clear contrary evidence of legislative intent," *Nat. R.R. Passenger Corp. v. Passengers Assn.*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646, 652 (1974) (citation omitted). Therefore, a search for the legislative intent behind § 106, and especially § 106(c), is now appropriate.

The original draft of the proposed Bankruptcy Code submitted to the Ninety-Third Congress by the Commission on the Bankruptcy Laws of the United States contained the following provision and accompanying note:

*Section 1–104. Applicability of Act to United States, States and Subdivisions. All* provisions of this Act shall apply to the United States and to every department, agency and instrumentality thereof, and to every state and every subdivision thereof except where otherwise specifically provided. This section does not render any branch or unit of the

government eligible for relief as a petitioner except as provided in Chapter VIII, or subject to relief as a debtor upon an involuntary petition.

## NOTE

This section, with the exceptions indicated, answers the question whether *all* of the provisions of this Act are intended to apply to federal and state governments and to all subdivisions and instrumentalities thereof.

Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93d Cong., 1st Sess. Pt. II at 10 (1973) (reproduced in *Collier on Bankruptcy*, Appendix 2 § I (15th ed. 1984)) (emphasis added).

The original, identical House and Senate versions of current § 106, contained in H.R. 8200 and S. 2266, were far narrower in scope. H.R. 8200 and S. 2266 provided:

> *§ 106. Waiver of sovereign immunity.*
>
> (a) A governmental unit that files a proof of claim under section 501 of this title is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.
>
> (b) There shall be offset against an allowed claim or interest of a governmental unit for which such governmental unit filed a proof of claim or interest under section 501 of this title any claim against such governmental unit that is property of the estate.

H.R. 8200, 95th Cong., 1st Sess. 324 (1977); S. 2266, 95th Cong., 2d Sess. 313 (1978) (reproduced in *Collier*, Appendix 3 §§ III, VII). The reports circulated with the two bills were also identical and indicated the limited reach of this preliminary version of § 106 as follows:

> Section 106 provides for a limited waiver of sovereign immunity in bankruptcy cases. Though Congress has the power to waive sovereign immunity for the Federal government completely in bankruptcy cases, the policy followed here is designed to achieve approximately the same result that would prevail outside of bankruptcy. Congress does not, however, have the power to waive sovereign immunity completely with respect to claims of bankrupt [sic] estate against a State, though it may exercise its bankruptcy power through the supremacy clause to prevent or prohibit State action that is contrary to bankruptcy policy.

> .   .   .   .   .

> Though this subsection creates a partial waiver of immunity when the governmental unit files a proof of claim, it does not waive immunity if the debtor or trustee, and not the governmental unit, files proof of a governmental unit's claim under proposed 11 U.S.C. § 501(c).

> This section does not confer sovereign immunity on any governmental unit that does not already have immunity. It simply recognizes any immunity that exists and prescribes the proper treatment of claims by and against that sovereign.

H.R.Rep. 595, 95th Cong., 1st Sess. 317 (1977); S.Rep. 989, 95th Cong., 2d Sess. 29–30 (1978) U.S.Code Cong. & Admin. News, pp. 5787, 5816, 6274 (reproduced in *Collier*, Appendix 2 § II, Appendix 3 § V).

After H.R. 8200 and S. 2266 had been sent to the Conference Committee, § 106 was amended for the last time. Sections 106(a) and (b) were reworded and § 106(c) made its initial and permanent appearance. An identical explanatory statement of § 106(c) was given to both houses of Congress and was made as follows:

> Section 106(c) relating to sovereign immunity is new. The provision indicates that the use of the term "creditor," "entity", or "governmental unit" in title 11 applies to governmental units notwithstanding any assertion of sovereign immunity and that an order of the court binds governmental units. The provision is included to comply with the requirement in case law that an express waiver of sovereign immunity is required in order to be effective. Section 106(c) codi-

fies *in re Gwilliam,* 519 F.2d 407 (9th Cir., 1975), and *in re Dolard,* 519 F.2d 282 (9th Cir., 1975), permitting the bankruptcy court to determine the amount and dischargeability of tax liabilities owing by the debtor or the estate prior to or during a bankruptcy case whether or not the governmental unit to which such taxes are owed filed a proof of claim. Except as provided in sections 106(a) and (b), subsection (c) is not limited to those issues, but permits the bankruptcy court to bind governmental units on other matters as well. *For example, section 106(c) permits a trustee or debtor in possession to assert avoiding powers under title 11 against a governmental unit; contrary language in the House report to H.R. 8200 is thereby overruled.*

124 Cong.Rec.H. 11091 (Sept. 28, 1978) (remarks of Rep. Edwards); S. 17407 (Oct. 6, 1978) (remarks of Sen. DeConcini) (reproduced in *Collier,* Appendix 3 §§ IX at IX–90, X at X–16) (emphasis added). Thus, the final version of § 106 abandons the initial, limited approach to the "waiver" issue and more nearly approximates the broad approach of the Commission draft. As an early and leading commentator has observed:

Under the version of section 106 as it originally passed both houses of Congress, the government could have argued with considerable success that a waiver of sovereign immunity by any governmental unit would depend on the filing of a proof of claim or interest by the unit involved. The section thus could have been construed as overruling the many cases that have held the government suable under section 2a(2A) and (12) of the Bankruptcy Act when the debtor seeks a determination of dischargeability of tax or other governmental claim. The courts have rejected as immaterial to their jurisdiction under the Bankruptcy Act that the governmental unit has filed no proof of claim. Section 106(c) as finally enacted provides that notwithstanding any assertion of sovereign immunity, any provision of Title 11 referring to "creditor," "entity," or "governmental unit" applies to governmental units, and "a determination by the court of an issue arising under such provision binds governmental units." According to the legislative history, the purpose is "to comply with the requirement in case law that an express waiver of sovereign immunity is required in order to be effective." Although more guardedly drafted, section 106 comes close to adopting the broad provision for general applicability of the bankruptcy laws to the federal or state government that had been recommended by the Commission on the Bankruptcy Laws. The scope of a waiver of sovereign immunity is essentially a matter of determining congressional intent.

F.R. Kennedy, *Automatic Stays Under the New Bankruptcy Law,* 12 U.Mich.J. of Law Reform 3, 29 (1978). *See also* 2 *Collier on Bankruptcy* ¶ 106.04 at 106–9 to 106–10 (15th ed. 1984) ("Section 106(c) is as broadly applicable as would be expected from the language employed, and it permits the bankruptcy court to bind governmental units on matters other than tax claims. For example, section 106(c) permits a trustee or debtor-in-possession to assert avoiding powers granted under title 11 (*See, e.g.,* section 548) against a governmental unit") (footnotes omitted). I, therefore, conclude there is "clear ... evidence of legislative intent," *Nat. R.R. Passenger Corp. v. Passengers Assn., supra,* from both the plain language of § 106(c) and its legislative history demonstrating that Congress contemplated that a State be answerable to the estate in money damages in a situation comparable to that presented here.

### B.

### *§ 106(c) And The Eleventh Amendment Immunity*

Connecticut claims that even if § 106(c) effectively "waives" its sovereign immunity, its Eleventh Amendment immunity is untouched. The term "sovereign immunity" embraces two distinct concepts—*"whether* [a State] may be

sued," *Pennhurst State School & Hospital v. Halderman,* — U.S. —, —, 104 S.Ct. 900, 907, 79 L.Ed.2d 67, 78 (1984) (emphasis in original), or common-law sovereign immunity, *and "where* [a State] may be sued," *id.,* or constitutional sovereign immunity in the Eleventh Amendment.

■ The quantum of proof concerning Congress' intent to abrogate the Eleventh Amendment is high for "[w]hen Congress' intent to abrogate is unclear, a state's Eleventh Amendment immunity will be upheld." *County of Monroe v. State of Fla.,* 678 F.2d 1124, 1131 (2d Cir.), *cert. denied,* 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983) (citations omitted). This proof requirement is extremely rigorous when the effect of the purported federal liability upon the state treasury is potentially severe. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *County of Monroe v. State of Fla., supra.*

In § 106, Congress has clearly and unambiguously answered in the affirmative the question of *whether* the State may be sued, but Congress did not address in § 106 the question of *where* that liability could be enforced. However, as another part of the Bankruptcy Reform Act of 1978, Congress passed the statute which is codified at 28 U.S.C. § 1471(b) and which provides:

> Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

28 U.S.C.A. § 1471(b) (West 1983 Supp.). This jurisdictional provision, by its terms, applies to all civil proceedings and makes no special mention of proceedings against States. However, the Supreme Court cases have never suggested that if Congress expressly provides for State liability under a federal statutory scheme, that a general grant of concurrent jurisdiction to the federal courts over cases arising under that statutory scheme would be insufficient to cover actions against a State. *See, e.g.,*

*Parden v. Terminal R. of Alabama Docks Dept.,* 377 U.S. 184, 190 n. 8, 84 S.Ct. 1207, 1212 n. 8, 12 L.Ed.2d 233, 239 n. 8 (1964). Moreover, § 1471 evinces a strong legislative intent that the estate have the benefit of bringing all its litigation in the single federal forum. Therefore, I conclude that Congress not only waived the State's common-law sovereign immunity but intended that such waiver be enforced in the federal courts.

## C.

### *Congress' Power to Abrogate The Eleventh Amendment Immunity Under The Bankruptcy Power*

■ The question remains that if Congress intended to abrogate the Eleventh Amendment immunity in § 106 and § 1471(b), can it do so pursuant to the Bankruptcy Clause? *Parden v. Terminal R. of Alabama Docks Dept., supra,* established that Congress can provide that a State's conducting activity validly subject to federal regulation under Art. I, § 8 will waive the State's Eleventh Amendment immunity. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), decided that Congress has the power to abrogate the Eleventh Amendment immunity pursuant to legislation enforcing the Fourteenth Amendment without any requirement that the State subsequently consent expressly or otherwise. However, the Supreme Court has not addressed the issue presented here of whether or not Congress can abrogate the Eleventh Amendment immunity without subsequent State consent pursuant to an Art. I, § 8 power.

There is relevant authority from the Courts of Appeals. The Fifth Circuit employed the following rationale in *Peel v. Florida Dept. of Transp.,* 600 F.2d 1070 (5th Cir.1979) when a state employee sued Florida in federal court for back wages and benefits under the Veterans Reemployment Rights Act, passed by Congress pursuant to the Art. I, § 8 War Power Clause:

> [A] state consents to private damage actions when Congress manifests a sufficient purpose to abrogate a state's immu-

nity. Under this approach, the state waived its immunity and gave Congress the power to legislate under delegated powers. As recognized by Chief Justice Hughes in an early case involving sovereign immunity, "States of the Union, still possessing attributes of sovereignty, shall be immune from suits, without their consent, save where there has been a surrender of this immunity in the plan of the convention." *Monaco v. Mississippi,* 292 U.S. 313, 322–23, 54 S.Ct. 745, 748, 78 L.Ed. 1282 (1934) (quoting the Federalist No. 81 (A. Hamilton)) (footnote omitted). This rationale removes the eleventh amendment as a bar whenever Congress validly has exercised its powers. *Peel,* 600 F.2d at 1080. The *Peel* court traced the trend of Supreme Court authority from *Parden v. Terminal Railway,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964) to *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), *Peel,* 600 F.2d at 1075–79, and concluded:

> [W]e are persuaded that nothing in the history of the eleventh amendment, the doctrine of sovereign immunity, or the case law indicates that Congress, when acting under an article I, section 8 delegated power, lacks the authority to provide for federal court enforcement of private damage actions against the states.

*Peel,* 600 F.2d at 1080. The Seventh Circuit used similar analysis in another Veterans Reemployment Rights Act case in *Jennings v. Illinois Office of Ed.,* 589 F.2d 935 (7th Cir.), *cert. denied,* 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979) (Abrogation without subsequent consent pursuant to the War Power Clause). The Third Circuit relied upon *Peel* and *Jennings* when it held in *Gardner v. Com. of Pa. Dept. of Public Welfare,* 685 F.2d 106 (3d Cir.), *cert. denied,* 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982), as an alternative holding, that Congress could abrogate a State's Eleventh Amendment immunity pursuant to the Bankruptcy Clause. *Gardner,* 685 F.2d at 109 ("[I]f Congress intends to bind the states by a cause of action arising under federal law, the eleventh amendment is no bar.").

The Second Circuit appeared to accept the *Peel* analysis to the extent necessary to find valid abrogation without the need for subsequent State consent in *County of Monroe v. State of Fla.,* 678 F.2d 1124 (2d Cir), *cert. denied,* 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983) (Abrogation without subsequent consent pursuant to Art. IV Extradition Clause), and *Oneida Indian Nation of N.Y. v. State of N.Y.,* 691 F.2d 1070 (2d Cir.1982) (Abrogation without subsequent consent pursuant to Art. I, § 8, cl. 3, Commerce with the Indians Clause) (*Oneida* I).[7] However, in *Oneida Indian Nation of New York v. Oneida County,* 719 F.2d 525 (2d Cir.1983) (*Oneida* II), this Circuit again addressed the Eleventh Amendment immunity question in the context of the Commerce with the Indians Clause. In *Oneida* II, the court relied solely upon a waiver-by-subsequent-conduct theory without mentioning abrogation pursuant to Art. I, § 8, cl. 3.[8] *Oneida* II, 719 F.2d 543–544 and 543 n. 25. *Oneida* II, however, did not reject the rationale of *County of Monroe* and *Oneida* I,

---

**7.** When the states granted to Congress the power "[t]o regulate commerce ... with the Indian tribes," U.S. Constitution, Art. I, § 8, cl. 3, they necessarily "surrendered a portion of their sovereignty" ... and thereby granted Congress the power to abrogate the states' immunity from suits upon claims arising out of such regulation. In enacting 28 U.S.C. § 1362 pursuant to this authority, Congress clearly intended to abrogate the states' immunity from suit.

> · · · · ·

We conclude, therefore, that Congress' intent in enacting § 1362 to provide Indian tribes with a capacity to sue that is as broad in some respects as that of the United States indicates an intent to remove the states' Eleventh Amendment immunity in suits brought by the tribes.

*Oneida* I, 691 F.2d at 1079–1080 (citations and footnotes omitted).

**8.** The Supreme Court has recently granted certiorari in *Oneida* II *inter alia* to resolve the question of whether a State, by negotiating treaties with an Indian tribe in alleged violation of 1793 Trade and Intercourse Act can be held to have waived impliedly its immunity to suit in federal court by non-Indian claimants. *See* —— U.S. ——, 104 S.Ct. 1590, 80 L.Ed.2d 123 (1984).

and based upon the ruling of those two earlier cases, as well as *Peel, Jennings* and *Gardner,* I hold that in § 106, Congress validly abrogated the Eleventh Amendment immunity pursuant to the Bankruptcy Clause, regardless of the absence of subsequent State manifestations of consent.

## IV.

### RECOUPMENT

■ Connecticut argues that it does not owe debtor any money for the services rendered in March 1983 because it had a contractual right to recoup unintentional overpayment for past services from sums due for later services. *See* note 1, *supra.* Connecticut further asserts that it retained its contractual right of recoupment even though the debtor-in-possession never formally assumed the contract pursuant to § 365 of the Code.[9] Connecticut contends that by demanding payment under the contract postpetition, the debtor accepted the benefits of the contract and thus also assumed its burdens. *See In re Yonkers Hamilton Sanitarium, Inc.,* 22 B.R. 427, 9 B.C.D. 505 (Bkrtcy.S.D.N.Y.1982); *Ambulance Corp. of America v. Schweiker (In re Ambulance Corp. of America),* 27 B.R., 910, 10 B.C.D. 355 (Bkrtcy.E.D.Pa.1983) (Alternative holding). *But see Commonwealth of Massachusetts v. Dartmouth House Nursing Home, Inc. (In re Dartmouth House Nursing Home, Inc.),* 24 B.R. 256, 9 B.C.D. 954 (Bkrtcy.D.Mass. 1982), *appeal dismissed,* 30 B.R. 56, 10 B.C.D. 754, 8 C.B.C.2d 728 (Bkrtcy.App. Mass. 1st Cir.1983).

In *NLRB v. Bildisco & Bildisco,* —— U.S. ——, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), the Supreme Court considered the enforceability of a prepetition collective-bargaining agreement against a chapter 11 debtor where the debtor had accepted the benefits of the contract without having formally assumed it. In holding that the prepetition agreement was not enforceable against the debtor, the Court said:

If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services, which, depending on the circumstances of a particular contract, may be what is specified in the contract. Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere* ....

[T]he filing of the petition in bankruptcy means that the collective-bargaining agreement is no longer immediately enforceable, and may never be enforceable again.

*Id.,* —— U.S. at ——, 104 S.Ct. at 1199, 79 L.Ed.2d at 499. (citations omitted).

The above-quoted language in *Bildisco* which limits Connecticut's *cum onere* theory to a formally assumed contract, is broad enough to apply in the present situation. In this case, if a *Bildisco* theory is applied there is no enforceable agreement between Connecticut and the debtor from which Connecticut could derive a contractual right of recoupment. Connecticut would therefore be liable for the reasonable value of the debtor's services.

■ However, even if the agreement between Connecticut and the debtor remained enforceable postpetition without formal assumption, Connecticut still cannot retain the monies due for the March 1983 services. Connecticut argues that its right to recover past overpayments out of amounts due for current services is a right of recoupment rather than set-off because the right to recover arose out of the same contract as debtor's right of payment for its March 1983 services. Accepting, *arguendo,* Connecticut's claim that the two rights arise from the same contract, that circumstance is not sufficient to create recoupment. Recoupment requires not only that the defendant's right of recovery and the plaintiff's right of payment arise from the same contract but also that they relate

9. Section 365 provides, "[T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C.A. § 365(a) (West 1979).

to the same subject matter. T.W. Waterman, *A Treatise on the Law of Set-Off, Recoupment and Counterclaim* § 468 at 482–83 (2d ed. 1872). The two rights here neither relate to the same subject matter nor arise from the same contract. Debtor's right of payment relates only to its March 1983 services; Connecticut's right of reimbursement relates to prior services under different contracts for the years 1976–1980. Therefore, Connecticut asserts not a right of recoupment but a right to set off a prepetition claim against the debtor against a postpetition obligation to the debtor. This claimed right is contrary to federal bankruptcy law and is, therefore, unenforceable. *In re Dartmouth House Nursing Home, Inc., supra,* (Right to recover prepetition overpayments from postpetition earnings unenforceable). It is not now necessary to choose between the two theories discussed above since it is only required at this point in the proceeding that it be clear that the plaintiff has stated some enforceable theory of recovery.

## V.

### POLICY ARGUMENT

Connecticut urges a policy argument upon the court in the following language:

> If bankruptcy law and the Court permitted the trustee to do what he is attempting here, a message would be sent to every nursing home owner in Connecticut "to fill your annual cost reports with whatever claims you want, sit back and pocket illegal Medicaid overpayments, wait for the State's field auditors to catch you, then file in Chapter 11 in bankruptcy to misuse and abuse the bankruptcy statute so as to prevent the taxpayers from recovering the monies wrongfully taken from them.

Connecticut's Memorandum at 48. Connecticut's argument is misdirected. If the trustee prevails in this proceeding, the recovery will not go to line the pockets of the stockholders of the debtor. Rather, the unpaid administrative expense creditors in the chapter 11 case may have funds available to compensate them for the services which provided the basis for the $64,010.24 claim against Connecticut.

## VI.

### CONCLUSION

For the reasons discussed above, Connecticut's motions to dismiss for lack of subject matter jurisdiction and failure to state a claim for relief (treated as a motion for summary judgment) are denied. It is

SO ORDERED.