In re Fletcher L. ANDERSON, Debtor.

Fletcher L. ANDERSON, Plaintiff,

v.

VERMONT DEPARTMENT OF SOCIAL WELFARE, Defendant.

Bankruptcy No. 86–10.
Adv. No. 86–34.

United States Bankruptcy Court,
D. Vermont.

Feb. 27, 1987.

D. Nicholson, Nicholson & Taylor, Burlington, Vt., for debtor/plaintiff Fletcher Anderson (Anderson).

R. Shems, Esq., Asst. Atty. Gen., for State of Vermont.

## MEMORANDUM DECISION AND ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT AND DISMISSAL

FRANCIS G. CONRAD, Bankruptcy Judge.

The debtor filed a complaint to avoid the State's claim to his Supplemental Social Security Income (SSI) payment. Relying principally on the Eleventh Amendment to the U.S. Constitution, Vermont moved for summary judgment and dismissal. We deny the State's motions because the Bankruptcy Code waives Vermont's sovereign immunity and the complaint states a cause of action.

Anderson, a citizen of Vermont, received public assistance from Vermont while awaiting a determination of his eligibility for Social Security benefits. In exchange for the State's assistance, Anderson assigned his rights in the benefits to Vermont. By January 13, 1986, Anderson owed Vermont $7,760.79. A United States Treasury check for $9,636.88 of benefits was delivered to Vermont on January 16, 1986. Anderson filed a chapter 7 petition on January 21, 1986, listing the Vermont Department of Social Welfare as an estimated and unperfected creditor for $10,-000.00.

Allegedly unaware of the bankruptcy petition, Vermont issued a check for $1,876.09 to Anderson on January 22, 1986. Asserting an interest in the U.S. Treasury check received on January 16, 1986, Vermont de-

posited it to its account on February 14, 1986.

The State moves to dismiss Anderson's complaint to avoid a lien for failure to state a claim upon which relief can be granted, F.R.Civ.P. 12(b)(6), and for summary judgment under F.R.Civ.P. 56. To support its motion, Vermont urges us to construe Vermont Statute, 33 VSA § 2575,[1] as prohibiting Anderson's adversary proceeding. As an additional ground, the State asserts its constitutional rights under the Eleventh Amendment to the United States Constitution.[2]

■ We are unable to make any sense out of Vermont's Fed.R.Civ.P. Rule 12(b)(6) motion. For support, they direct us to a Vermont statute, 33 VSA § 2575,[3] which exempts public assistance from alienation and indicate that it is applicable to them. As additional support for their argument, they cite 11 U.S.C. § 523(a)(10) to stand for the proposition that they, as a creditor, have the right to exempt property of the bankruptcy estate. Their exemption argument is so preposterous and without any foundation in the law that we dismiss it without further discussion.

Vermont's second ground for dismissal asks that we review the plaintiff's claim for relief as one barred by the Eleventh Amendment of the United States Constitution. They request dismissal under F.R. Civ.P. 56. The ground is more appropriately categorized as a F.R.Civ.P. 12(b)(2) motion and we decide Vermont's motion in that procedural posture.

By its terms the Eleventh Amendment prohibits suits in Federal Court commenced or prosecuted by one of the United States, by citizens of another State, or by citizens or subjects of any foreign State. The Supreme Court has decided, however, that the policy behind the Eleventh Amendment, namely state sovereignty, prevents a Federal Court from entertaining a suit brought against a state by its own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Because the Eleventh Amendment is an "exemplification" of the doctrine of Sovereign immunity, we understand how Vermont has confused what we perceive is a sovereign immunity defense with one lying within the Eleventh Amendment to the United States Constitution.

■ It is a correct statement of the law that absent its consent, a state may not be sued in a Federal Court. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

If, as Anderson argues, there is a waiver of sovereign immunity, we must look elsewhere for it. On the issue at hand, Vermont's law contains no waiver of its sovereign immunity. By virtue of Article 1, § 8, clause 4 of the United States Constitution, the states have granted Congress the power to waive sovereign immunity to suit if it (Congress) does so expressly by clear language that the immunity was swept away or through clear implication drawn from legislative consideration or legislative history. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed. 358 (1970).

■ Congress has exercised its plenary power by enacting section 106[4] of the

---

1. 33 VSA § 2575 states: "All rights to, and all moneys or orders granted to persons as assistance shall be inalienable by assignment, transfer, attachment, trustee process, execution or otherwise. In the case of bankruptcy the assistance shall not pass to or through a trustee or other person acting on behalf of creditors."

2. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State."

3. See footnote 1, supra.

4. 11 USC § 106 provides: "(a) A government unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such government unit's claim arose. (b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate. (c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and (2) a deter-

Bankruptcy Code. The section states that when a governmental unit has asserted a claim against an estate, it has waived its immunity to all other claims arising out of the same transaction. *Connecticut Performing Arts Foundation v. Brown,* 47 B.R. 911, 916 (Bkrtcy.D.C.1985). The legislative history of § 106 shows clearly the express waiver required by the *Quern* Court. During consideration of a limited version of 106, the legislative history explained the provision as follows:

> Section 106 provides for a limited waiver of sovereign immunity.... Congress does not ... have the power to waive sovereign immunity completely with respect to claims of a bankrupt estate against a State, though it may exercise its bankruptcy power through the supremacy clause to prevent or prohibit State action that is contrary to bankruptcy policy.
>
> There is, however, a limited change in the result from the result that would prevail in the absence of bankruptcy ... First, the filing of a proof of claim against the estate by the governmental unit is a waiver by that governmental unit of sovereign immunity with respect to compulsory counter claims, as defined in the Federal Rules of Civil Procedure, that is, counter-claims arising out of the same transaction or occurrence.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 317 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 29 (1978); U.S.Code Cong. & Admin.News 1978, pp. 5787, 5815, 6274. See *In re Adirondack Ry. Corp.,* 28 B.R. 251, 10 B.C.D. 256 (Bkrtcy.N.D.N.Y.1983); *Matter of Willington Convalescent Home, Inc.,* 39 B.R. 781, 11 B.C.D. 1039; Bankr.L.Rep. para. 69863, 10 C.B.C.2d 850 (Bkrtcy.D. Conn.1984).

Sections 106(a) and (b) were too limited for Congressional purposes. The Conference Committee added 106(c) to extend the waiver of sovereign immunity beyond those cases where the state filed a proof of claim against the bankruptcy estate. With regard to § 106(c), Congress states:

The provision indicates that the use of the term "creditor," "entity," or "governmental unit in title 11 applies to governmental units notwithstanding any assertion of sovereign immunity and that an order of the court binds governmental units. The provision is included to comply with the requirement in case law that an express waiver of sovereign immunity is required in order to be effective. Section 106(c) codifies *In re Gwilliam,* 519 F.2d 407 (9th Cir., 1975), and *In re Dolard,* 519 F.2d 282 (9th Cir., 1975), permitting the bankruptcy court to determine the amount and dischargeability of tax liabilities owing by the debtor or the estate prior to or during a bankruptcy case whether or not the governmental unit to which such tax liabilities are owed filed a proof of claim. Except as provided in sections 106(a) and (b), subsection (c) is not limited to those issues, but permits the bankruptcy court to bind governmental units on other matters as well. For example, section 106(c) permits a trustee or debtor in possession to assert avoiding powers under title 11 against a governmental unit; contrary language in the House report to H.R. 8200 is thereby overruled.

124 Cong.Rec.H. 11091 (Sept. 28, 1978) (remarks of Rep. Edwards); S. 17407 (Oct. 6, 1978) (remarks of Sen. DeConcini). See *Matter of Willington Convalescent Home, Inc., supra* at 788–9. From this report, the Willington Court found a clear legislative intent that a State be responsible to a bankruptcy estate for monetary damages in specific situations. *Willington, supra,* at 788. The determination of liability under a welfare benefits assignment within the context of a lien avoidance adversary proceeding is conceptually similar to a tax liability determination. Accordingly we hold that Congress has expressly waived Vermont's sovereign immunity in this area. Our holding at this juncture is sufficient to decide the motion. But to ensure completeness, we discuss the other arguments raised by the State in its motion.

---

mination by the court of an issue arising under

such a provision binds governmental units."

■ In the *Willington* case, Connecticut overpaid the debtor estate pursuant to a medicaid agreement and sought to recover the damages. The State never filed a proof of claim and asserted sovereign immunity to prevent the Bankruptcy Court from binding Connecticut to a judgment. *Willington, supra,* at 784. The Court noted that through the legislative history and the statute's plain meaning it clearly affirmed Congress' intent that Connecticut may be sued under 106(c). Congress, however, did not determine where the liability could be enforced. *Willington, supra,* at 789. Citing 28 USC § 1471(b), the *Willington* Court found that all civil proceedings arising in or related to cases under title 11 are the exclusive jurisdiction of the District Courts. Congress made no mention of special proceedings against States. The statute indicates a potent legislative intent that the estate should profit from having all of its litigation heard in a single federal forum. Compare 28 USC § 1334.[5] Therefore, not only had Congress waived Connecticut's common law sovereign immunity, but clearly intended that the waiver be enforced in the Federal Courts. *Willington, supra,* at 789. We concur with the *Willington* Court and hold that the State's interest in any of Anderson's SSI benefits must be determined by us as provided under 28 USC § 1334(b).

Connecticut's final argument in the *Willington* case, the converse of this proceeding, rested on the contractual agreement with the debtor that gave the State the right to recoup unintended overpayment for past services from amounts due for later services. The contractual agreement arose pre-petition. The services from

which Connecticut attempted a recoupment arose post-petition. The Court found that recoupment required that the debtor's right to recovery and the State's right to payment originate in the same contract and correlate to the same subject matter. Since neither requirement was fulfilled, the Court characterized Connecticut's assertion as a "right to set off a prepetition claim against the debtor against a postpetition obligation to the debtor," and thus unenforceable in bankruptcy. *Willington, supra,* at 792.

■ In this proceeding Vermont is asserting its rights to the SSI check under the January 14, 1983, agreement with the debtor. The agreement and debt were prepetition. The deposit of the check occurred post-petition. Since the right to the SSI benefits relates to the agreement and the post-petition deposit to the bankrupt's estate, the State is exerting, not a recoupment, but rather a setoff.

A post-petition setoff is within the jurisdiction of this Court to decide. See 11 USC § 553.[6] Vermont's setoff action coupled with its sovereign immunity post-petition defense strikes us as the use of sovereign immunity as a sword and not as the shield it was intended to be. Such use of sovereign immunity contravenes the stated intent of § 106 to prohibit State action that is contrary to bankruptcy policy. See Notes of the Committee on the Judiciary, Senate Report No. 95–989, supra.

■ Absent the broad reaches of § 106(c), Vermont's assertion of Eleventh Amendment immunity is also not applicable to this proceeding. Relying primarily on

---

5. 28 USC § 1334 provides: "(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11. (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11 ... (d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."

6. 11 USC § 553 provides: "(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect the rights of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ..."

**764**

*Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), and its progeny, to support its Eleventh Amendment rights, the State asserts that Anderson's adversary proceeding is a raid on the State's coffers. In *Hutto*, the Court recognized that retroactive monetary relief is indeed a violation of a state's Eleventh Amendment rights, but prospective relief is not. 437 U.S. 678, at 690, 98 S.Ct. 2565, at 2573. In addressing the issue of an award of attorney's fees against the State, the Court determined that the cost of compliance was "'ancillary' to the prospective order enforcing federal law ... The line between retroactive and prospective relief cannot be so rigid that it defeats the effective enforcement of prospective relief." *Hutto, supra*, at 690, 98 S.Ct. at 2573.

Vermont attempts to distinguish the *Hutto* decision by arguing that because it has already deposited and recorded the receipt of the SSI check, releasing the funds to Anderson would be retroactive relief. We disagree.

As the attorney's fees in *Hutto* were ancillary to enforcement of prospective relief, so is the return of the disputed funds ancillary to the prospective relief awarded a debtor by a discharge in bankruptcy. Under these circumstances, physical possession of the funds does not resolve whether release of the funds is retroactive or prospective relief. The determining factor is, instead, legal entitlement, a matter for decision upon trial. Until actual ownership of the funds in the State's possession is determined, avoidance of the lien cannot be characterized as retroactive relief. Therefore, without a clear determination of possession, Vermont's Eleventh Amendment immunity to retroactive relief, had it not been waived, is not implicated. See M. Jones, Suits Against a State Under the Bankruptcy Code for Retrospective Monetary Relief, 91 Com.L.J. 278 (Spring 1986). Now, Therefore,

It is ORDERED that Vermont's motions for Summary Judgment and Dismissal are DENIED, and it is FURTHER ORDERED that a Pre-Trial Conference shall be held at the Federal Court House in Montpelier, Vermont.